Appeal No. 23-3879

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PACIFIC AIRSHOW LLC,
*Objector-Appellant*,

*v.*

AMPLIFY ENERGY CORP; BETA OPERATING COMPANY, LLC;
SAN PEDRO BAY PIPELINE COMPANY; COSTAMARE SHIPPING
COMPANY S.A.; CAPETANISSA MARITIME CORPORATION;
MSC MEDITERRANEAN SHIPPING COMPANY S.A.;
DORDELLAS FINANCE CORP.; M/V BEIJING; MEDITERRANEAN
SHIPPING COMPANY S.R.L.; MSC DANIT; MSC
SHIPMANAGEMENT LIMITED; V. SHIPS GREECE LTD.,
*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
THE HONORABLE DAVID O. CARTER, JUDGE,
CASE NO. 8:21-CV-01628-DOC-JDE

## OPENING BRIEF FOR APPELLANT PACIFIC AIRSHOW LLC

**COMPLEX APPELLATE
LITIGATION GROUP LLP**
MARY-CHRISTINE SUNGAILA
CHARLES M. KAGAY
JENNIFER TEAFORD
620 NEWPORT CENTER DR., STE. 1100
NEWPORT BEACH, CA 92660
(949) 991-1900
MC.SUNGAILA@CALG.COM
CHARLES.KAGAY@CALG.COM
JENNIFER.TEAFORD@CALG.COM

**ROBINSON CALCAGNIE, INC.**
DANIEL ROBINSON
19 CORPORATE PLAZA DRIVE
NEWPORT BEACH, CA 92660
DROBINSON@ROBINSONFIRM.COM

**SL LAW, PC**
SUOO LEE
4343 VON KARMAN AVE.
SUITE 250J
NEWPORT BEACH, CA 92660
(949) 942-6077
SLEE@SLLAWPC.COM

*Attorneys for Objector-Appellant Pacific Airshow LLC*

# CORPORATE DISCLOSURE STATEMENT

Appellant Pacific Airshow LLC is a limited liability company that is wholly owned by Code Four Presents, Inc., a privately owned California corporation.  No publicly traded corporation owns more than 10% of Code Four Presents, Inc.

Date:  February 23, 2024          By:  _s/ Mary-Christine Sungaila_
                                    Mary-Christine Sungaila
                                    Charles M. Kagay
                                    Jennifer Teaford
                              Complex Appellate Litigation Group LLP

                                    Daniel Robinson
                              Robinson Calcagnie, Inc.

                                    Suoo Lee
                              SL Law, PC

                              *Attorneys for Objector-Appellant*
                              *Pacific Airshow LLC*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT.............................................i

TABLE OF AUTHORITIES .................................................................v

INTRODUCTION ............................................................................ 1

JURISDICTIONAL STATEMENT ..................................................... 5

STATEMENT OF THE ISSUES ......................................................... 6

STATUTORY PROVISIONS INVOLVED.............................................. 7

STATEMENT OF THE CASE ............................................................ 9

    A.    Orange County businesses damaged by the oil spill bring a class action. ................................................................ 9

    B.    The district court approves two separate classwide settlements and imposes specific class notice requirements. .......................................................... 11

        1.    The court approves and finalizes a classwide settlement with Amplify............................................. 11

        2.    The court approves and finalizes a classwide settlement with the Shipping Defendants..................... 13

    C.    Pacific Airshow pursues its independent claims from the oil spill and seeks exclusion from the class action settlements, but ultimately is forced into them. ................. 15

        1.    Pacific Airshow is injured by the oil spill and begins settlement talks with Amplify that are separate and apart from this class action. .......................................... 15

        2.    The Settlement Administrator does not consider Pacific Airshow to be part of any class and does not send it individual notice of the Amplify Settlement by the deadline for doing so............................................. 16

        3.    At Amplify's later request, the Settlement Administrator allegedly sends Pacific Airshow individual notice of the court-approved class settlement—four months after the notice deadline and three months after the opt-out deadline. ............... 17

D.   Out of an abundance of caution, Pacific Airshow submits an opt-out request and a claim. ............................................. 18

E.   The Settlement Administrator assures Pacific Airshow that it is not a class member. ................................................. 18

F.   Pacific Airshow does not receive individual notice of the Shipping Defendants Settlement, but still opts out of that settlement too. ........................................................................ 19

G.   The Settlement Administrator deems Pacific Airshow's opt-out of the Shipping Defendants Settlement invalid on technical grounds. ................................................................. 20

H.   Pacific Airshow attempts to reach the Settlement Administrator to rectify any technical defects in its opt-out to the Shipping Defendants Settlement, and the Settlement Administrator again informs it that it is not a member of any class. ................................................. 20

I.   Amplify convinces the district court to put Pacific Airshow into the Waterfront Tourism Class, which is subject to both settlements. ......................................... 21

J.   The district court denies Pacific Airshow's request to opt out of the settlements. ............................................ 23

K.   Pacific Airshow appeals. ................................... 24

SUMMARY OF THE ARGUMENT ......................................... 24

STANDARD OF REVIEW AND REVIEWABILITY ........................... 26

ARGUMENT .......................................................... 27

I.   The District Court Erred in Declaring Pacific Airshow to Be a Member of the Waterfront Tourism Class Because It Does Not Fit Within the Class Definition. ........................... 27

A.   The definition of the Waterfront Tourism Class does not include a business like Pacific Airshow. ................. 28

B.   Amplify's arguments for putting Pacific Airshow into the Waterfront Tourism Class lack merit. ................... 30

iii

II.  The District Court Erred in Determining That Pacific
     Airshow Received Adequate Notice and Refusing to Allow
     It to Opt Out of the Amplify Settlement. .............................. 34

     A.  The class notice given to Pacific Airshow did not
         comport with the law, and thus Pacific Airshow was
         denied its right to opt out. ............................................ 35

         1.  The class notice did not comport with
             Rule 23. ............................................................. 35

         2.  Pacific Airshow never had the legally
             mandated opportunity to opt out. ....................... 45

     B.  The district court abused its discretion by not
         addressing or wrongly considering numerous factors
         relevant to allowing a delayed opt-out. ........................ 47

         1.  The district court ignored relevant factors......... 47

         2.  Pacific Airshow did not seek duplicative
             relief. ................................................................. 50

         3.  The opt-out request was not prejudicial to
             Amplify. ............................................................. 53

III. The District Court Erred in Denying Pacific Airshow the
     Right to Opt Out of the Shipping Defendants Settlement... 55

     A.  Pacific Airshow's opt-out request was not deficient...... 55

     B.  Pacific Airshow acted promptly to address any
         irregularities in its opt-out request. ............................ 59

     C.  The opt-out request was not prejudicial to the
         Shipping Defendants. .................................................... 63

CONCLUSION ......................................................................... 65

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## *Cases*

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997) .................................................................27, 37

*Briseno v. ConAgra Foods, Inc.*,
 844 F.3d 1121 (9th Cir. 2017) ..................................................40, 44

*CFTC v. Weintraub*,
 471 U.S. 343 (1985) ........................................................................57

*Cmty. Dental Servs. v. Tani*,
 282 F.3d 1164 (9th Cir. 2002) ........................................................57

*Council on Soc. Work Educ., Inc. v. Tex. Instruments Inc.*,
 105 F.R.D. 68 (N.D. Tex. 1985) ......................................................59

*Crown, Cork & Seal Co. v. Parker*,
 462 U.S. 345 (1983) ........................................................................37

*Eisen v. Carlisle & Jacquelin*,
 417 U.S. 156 (1974) ..................................................................36, 37

*Grondal v. United States*,
 21 F.4th 1140 (9th Cir. 2021)..........................................................33

*Harrison v. PPG Indus., Inc.*,
 446 U.S. 578 (1980) ........................................................................32

*In re Apple Inc. Device Performance Litig.*,
 50 F.4th 769 (9th Cir. 2022)...............................................40, 43, 44

*In re Four Seasons Sec. L. Litig.*,
 493 F.2d 1288 (10th Cir. 1974) .........................................51, 52, 58

*In re Linerboard Antitrust Litig.*, 223 F.R.D. 357 (E.D. Pa.),
 *amended by* 223 F.R.D. 370 (E.D. Pa. 2004) ..................................59

*In re Pangang Grp. Co.*,
 901 F.3d 1046 (9th Cir. 2018) ........................................................33

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
 37 F. Supp. 3d 1102 (N.D. Cal. 2014) ............................................59

*In re Victor Techs. Sec. Litig.*,
 792 F.2d 862 (9th Cir. 1986) ...............................................41, 46, 47

*Langer v. Kiser,*
    57 F.4th 1085 (9th Cir. 2023)........................................26

*Link v. Wabash R.R.,*
    370 U.S. 626 (1962) ....................................................57

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chi.,*
    120 F.R.D. 51 (N.D. Ill. 1988) .....................................63

*Narouz v. Charter Commc'ns, LLC,*
    591 F.3d 1261 (9th Cir. 2010) .....................................27

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) ....................................................36

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,*
    507 U.S. 380 (1993) ....................................................57

*Sacramento Reg'l Cnty. Sanitation Dist. v. Reilly,*
    905 F.2d 1262 (9th Cir. 1990) ...............................32, 34

*Scalia v. Emp. Sols. Staffing Grp., LLC,*
    951 F.3d 1097 (9th Cir. 2020) .....................................57

*Shaw v. City of Sacramento,*
    250 F.3d 1289 (9th Cir. 2001) .....................................26

*Silber v. Mabon,*
    18 F.3d 1449 (9th Cir. 1994) ..........26, 40, 42, 43, 45, 47, 48, 50, 63

*Silber v. Mabon,*
    957 F.2d 697 (9th Cir. 1992) ......................40, 41, 42, 45, 46, 47, 50

### Statutes

28 U.S.C. § 1291....................................................................5

28 U.S.C. § 1332....................................................................5

28 U.S.C. § 1333....................................................................5

28 U.S.C. § 1367....................................................................5

33 U.S.C. § 2717....................................................................5

46 U.S.C. § 30101..................................................................5

## Rules

C.D. Cal. R. 7-9 .................................................................. 22

Fed. R. App. P. 4 ................................................................. 5

Fed. R. Civ. P. 6 ................................................................ 47

Fed. R. Civ. P. 8 ................................................................ 53

Fed. R. Civ. P. 23 ............................... 7, 8, 36, 37, 43, 44, 45, 46, 58

Fed. R. Civ. P. 60 .............................................................. 48

## Other Authorities

Hannah Fry, *Pipeline Operators to Plead No Contest in Orange County Oil Spill and Pay Nearly $5 Million*, L.A. Times (Sept. 8, 2022, 4:41 PM), https://www.latimes.com/california/story/2022-09-08/pipeline-operators-agree-to-plead-no-contest-in-orange-county-oil-spill-and-pay-5-million .................................................... 1

Laura J. Nelson & Hannah Fry, *Pipeline Operators Agree to Plead Guilty in Orange County Oil Spill and Pay Nearly $13 Million*, L.A. Times (Aug. 26, 2022, 6:18 PM), https://www.latimes.com/california/story/2022-08-26/pipeline-operators-amplify-energy-guilty-pleas-federal-charges-orange-county-oil-spill ...................... 1

Restatement (Third) of Agency § 1.01 ....................................... 57

Grace Toohey, *Feds Call for Sweeping Changes in Southern California Shipping After 2021 Oil Spill*, L.A. Times (Dec. 7, 2023, 9:36 AM), https://www.latimes.com/california/story/2023-12-06/dangerous-proximity-of-ships-pipelines-led-to-huntington-beach-oil-spill-investigators-urge-safety-measures ......................... 1

**INTRODUCTION**

In January 2021, the anchors of two container ships struck an offshore crude oil pipeline off the coast of Orange County, California.[1] By October 2021, the pipeline had ruptured and released at least 25,000 gallons of toxic crude oil into the ocean.

This catastrophic oil spill wreaked havoc on the aquatic ecosystem across 650 square miles of marine waters. A number of lucrative fisheries closed, thousands of shorebirds became sick, and many of Orange County's famous beachfronts closed. Residents faced a toxic stench and

---

[1] This incident was widely reported in the press. *See, e.g.*, Grace Toohey, *Feds Call for Sweeping Changes in Southern California Shipping After 2021 Oil Spill*, L.A. Times (Dec. 7, 2023, 9:36 AM) (citing Nat'l Transp. Safety Bd., Summary of Virtual Meeting of Dec. 5, 2023), https://www.latimes.com/california/story/2023-12-06/dangerous-proximity-of-ships-pipelines-led-to-huntington-beach-oil-spill-investigators-urge-safety-measures; Laura J. Nelson & Hannah Fry, *Pipeline Operators Agree to Plead Guilty in Orange County Oil Spill and Pay Nearly $13 Million*, L.A. Times (Aug. 26, 2022, 6:18 PM), https://www.latimes.com/california/story/2022-08-26/pipeline-operators-amplify-energy-guilty-pleas-federal-charges-orange-county-oil-spill; Hannah Fry, *Pipeline Operators to Plead No Contest in Orange County Oil Spill and Pay Nearly $5 Million*, L.A. Times (Sept. 8, 2022, 4:41 PM), https://www.latimes.com/california/story/2022-09-08/pipeline-operators-agree-to-plead-no-contest-in-orange-county-oil-spill-and-pay-5-million. This introduction reflects the content of these news reports, as well as the detailed allegations of the operative complaint and other portions of the record in this action.

1

befouled ocean, while property owners lost full use of their homes. In addition, sport fishing, surfing, paddle boarding, recreational fishing, and equipment rental businesses had to temporarily shut down.

The spill also caused major harm to Appellant Pacific Airshow LLC. It operates a once-a-year, three-day airshow in Huntington Beach. Following 2020's cancellation due to Covid, the U.S. Navy Blue Angels, the Canadian Forces Snowbirds, and the U.S. Air Force Thunderbirds were to provide entertainment for an anticipated 1.5 million attendees, the largest spectator event in Huntington Beach history. The spill caused cancellation of the show's last day. Pacific Airshow lost millions in anticipated revenue and profits, business opportunities, goodwill, and reputation.

Within weeks, Pacific Airshow directly communicated its damage claims to Amplify Energy Corp., the owner and operator of the pipeline, and they began settlement negotiations. They reached a small settlement related to refunding certain ticket sales but did not settle Pacific Airshow's damages claims. Pacific Airshow continued to negotiate with Amplify to recover additional damages attributable to its inability to hold its October 3, 2021 event due to the oil spill.

Meanwhile, Amplify pleaded guilty to one federal criminal count of negligent discharge of oil into U.S. waters, and agreed to make payouts totaling nearly $13 million, including a criminal fine and repayment of government cleanup costs for the spill.[2]  It also pleaded no contest to state criminal charges and agreed to make payouts of nearly $5 million to the state and county.

Other injured parties (not including Pacific Airshow) initiated class action lawsuits against Amplify and, later, the ships and their owners and operators.  The consolidated class action was resolved through two settlements, one with Amplify and one with the ships and their owners and operators.

Pacific Airshow never joined that class action.  It did not meet the plain text of the class definition, and the Settlement Administrator confirmed multiple times in writing that Pacific Airshow was not a member of the class in either settlement.  Pacific Airshow wanted to

---

[2] Plea Agreement, *United States v. Amplify Energy Corp.*, No. 21-cr-226-DOC (C.D. Cal. Aug. 26, 2022), ECF No. 42.  Amplify admitted that it restarted the pipeline five times in response to its own leak detection alarms, thereby increasing the amount of oil contaminating the ocean and the devastating impact of the spill.  *See* Indictment at 2, *Amplify Energy Corp.* (Dec. 15, 2021), ECF No. 1; Plea Agreement, *supra*, Exh. 2 at 4-6.

pursue its own lawsuits, and toward that purpose, it continued to engage in settlement discussions with Amplify outside of the class action lawsuit. Amplify devised a plan to retroactively push Pacific Airshow into the class action settlements by claiming it was a class member despite not meeting the class definition and never having been identified on the class list that was used to provide direct notice three months earlier.

This appeal concerns the district court's orders rejecting the determination of the Settlement Administrator that Pacific Airshow was not a class member and adopting the recommendations of its Special Master Panel to force Pacific Airshow into both settlements, against its will, over its repeated objections, and after the opt-out deadline had lapsed. Worse, in the first settlement (with Amplify), the district court did so after the opt-out period had already closed, without any notice having been sent to Pacific Airshow before the opt-out period expired, and then refused to allow Pacific Airshow an opportunity to elect to opt out.

In the second settlement (with the ships and their owners and operators), though again no notice was sent to Pacific Airshow, it still managed to opt out within the opt-out period—only to have the district

court disqualify its opt-out on the sole basis that its counsel signed and provided its contact information on the opt-out form. (Of course, as a limited liability company, Pacific Airshow is required to act through an agent such as its counsel in legal matters.)

These erroneous rulings have forced Pacific Airshow into class action settlements when it is not a member of the class, and, even if it were a member of the class, denied it any meaningful ability to opt out. This Court should reverse.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1332(d)(2), 28 U.S.C. § 1333(1), 28 U.S.C. § 1367(a), 33 U.S.C. § 2717(b), and 46 U.S.C. § 30101(a). This Court has jurisdiction under 28 U.S.C. § 1291. On November 21, 2023, appellant Pacific Airshow LLC filed a timely notice of appeal pursuant to Fed. R. App. P. 4(a)(4)(A) from a final order establishing all parties' claims, entered on October 24, 2023, encompassing intermediate orders filed on May 11, 2023, and September 14, 2023. 6-ER-1209.

## STATEMENT OF THE ISSUES

1.     Where a purported class member has been assured repeatedly by the settlement administrator that it is not a member of any class, may the district court, at the final approval hearing, declare it to be a class member without support in the class definition and without allowing it an opportunity to brief the issue?

2.     May a purported class member be denied the right to opt out of a class action settlement where the best practicable notice was individual notice, but individual notice was not sent until after the opt-out deadline?

3.     May a purported class member be denied the right to opt out of a class action settlement on the ground that its opt-out request was supposedly technically deficient, even though the request complied with the requirements stated in the class notice, and the purported class member acted immediately to correct any claimed technical deficiencies?

## STATUTORY PROVISIONS INVOLVED

**Fed. R. Civ. P. 23. Class Actions**

…

**(b) Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:

…

**(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:

**(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;

**(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;

**(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

**(D)** the likely difficulties in managing a class action.

**(c) Certification Order; Notice to Class Members; Judgment; Issues Classes; Subclasses.**

…

**(2) *Notice.***

**(A)** *For (b)(1) or (b)(2) Classes.* For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class.

7

**(B)** *For (b)(3) Classes.* For any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language:

**(i)** the nature of the action;

**(ii)** the definition of the class certified;

**(iii)** the class claims, issues, or defenses;

**(iv)** that a class member may enter an appearance through an attorney if the member so desires;

**(v)** that the court will exclude from the class any member who requests exclusion;

**(vi)** the time and manner for requesting exclusion; and

**(vii)** the binding effect of a class judgment on members under Rule 23(c)(3).

…

# STATEMENT OF THE CASE

## A.    Orange County businesses damaged by the oil spill bring a class action.

The litigation underlying this appeal is a class action brought to redress injuries caused by a major oil spill off the coast of California in October 2021.

Certain plaintiffs initiated the class action in October 2021.  6-ER-1196-1208.  Those plaintiffs then filed the operative complaint, the second amended complaint (the "operative complaint"), on October 4, 2022.  5-ER-892-1012.

The operative complaint alleges significant losses from the oil spill to three specifically defined classes of plaintiffs, including the "Waterfront Tourism Class."  5-ER-974-75.  The operative complaint defined this class as:

> Persons or entities in operation between October 2, 2021, and December 31, 2021, who:
>
> (a) owned or worked on a sea vessel engaged in the business of ocean water tourism (including sport fishing, sea life observation, and leisure cruising) and accessed the water between the San Gabriel River and San Juan Creek in Dana Point; or
>
> (b) owned businesses that offered surfing, paddle boarding, recreational fishing, and/or other beach or ocean equipment rentals and/or lessons or activities; sold food or beverages; sold fishing bait or equipment, swimwear or surfing apparel,

9

and/or other retail goods; or provided visitor accommodations south of the San Gabriel River, north of the San Juan Creek, and west of:

(1) Highway 1 in Seal Beach;

(2) Orange Avenue and Pacific View Avenue in Huntington Beach; and

(3) Highway 1 south of Huntington Beach.

5-ER-974-75.

The operative complaint also alleges that the classes' losses resulted from the actions of two groups of defendants. First, it alleges the pipeline, owned and operated by the Amplify Defendants ("Amplify"), was the source of the October 2021 oil spill.[3] 5-ER-898-99, 907. Second, it alleges that eight months earlier the anchors of two container ships, owned and operated by the Shipping Defendants,[4] struck the Amplify pipeline causing its rupture. 5-ER-898, 907-09.

---

[3] Amplify includes Amplify Energy Corporation, Beta Operating Company, LLC, and San Pedro Bay Pipeline Company. 5-ER-898.

[4] The Shipping Defendants include shipowners/operators MSC Mediterranean Shipping Company, Dordellas Finance Corp., Mediterranean Shipping Company S.r.l., MSC Shipmanagement Limited, Capetanissa Maritime Corporation, Costamare Shipping Co. S.A., V.Ships Greece Ltd., COSCO Shipping Lines Co. Ltd., and COSCO (Cayman) Mercury Co. Ltd. 5-ER-898. The vessels are appellees *M/V MSC Danit* and *M/V Beijing*. 5-ER-898.

**B. The district court approves two separate classwide settlements and imposes specific class notice requirements.**

**1. The court approves and finalizes a classwide settlement with Amplify.**

In October 2022, plaintiffs in the class action entered into a settlement agreement with Amplify. 4-ER-736-806. This settlement ("the Amplify Settlement") incorporated the definition of the three plaintiff classes from the operative complaint and resolved the litigation on behalf of the classes. 4-ER-736, 738, 743-44.

Shortly thereafter, plaintiffs in that action filed a motion for preliminary approval of the settlement, representing that the class action notice program plaintiffs proposed would meet the standards of the Federal Rules and due process. 4-ER-731. The program included "direct notice via first class mail to all identifiable Class Members," as well as a social media notice campaign, a settlement website, and a toll-free number. 4-ER-731-32. The proposed Settlement Administrator (JND Legal Administration LLC) exhaustively detailed what would constitute its "direct notice effort," which would provide individual notice to all reasonably identifiable class members. 4-ER-813-15.

In December 2022, the district court granted preliminary approval of the settlement and appointed JND Legal Administration as the Settlement Administrator. 4-ER-692-99. The court found that the parties' plan for providing notice to the classes constituted "the best notice practicable under the circumstances," amounted to due and sufficient notice to the classes of the terms of the settlement agreement and the final approval hearing, and complied fully with the requirements of the Federal Rules of Civil Procedure, the U.S. Constitution, and any other applicable law. 4-ER-695. The order required direct notice to be completed by January 16, 2023. 4-ER-695. The order required that any request for exclusion be mailed to the Settlement Administrator by February 14, 2023. 4-ER-696. The pertinent claim submission deadline was June 9, 2023. 4-ER-682.

On April 24, 2023, the district court granted final approval to the settlement. 3-ER-562-68. The order incorporated the specifically defined classes and found that the notice effectuated pursuant to the preliminary approval order constituted the best notice practicable under the circumstances, as well as due and sufficient notice to the classes of the terms of the settlement agreement and the final approval hearing, and

fully complied with legal requirements. 3-ER-564-65, 567. The court entered judgment on May 11, 2023. 1-ER-14-15.

> **2. The court approves and finalizes a classwide settlement with the Shipping Defendants.**

The same group of plaintiffs also entered into a settlement agreement with the Shipping Defendants. 3-ER-409-77. Like the Amplify Settlement, this settlement ("the Shipping Defendants Settlement") resolved the litigation on behalf of the same three specifically defined classes. 3-ER-409, 411.

Those plaintiffs then filed a motion for preliminary approval of the settlement. 3-ER-374-407. The motion represented that the notice program plaintiffs proposed would meet the standards of the Federal Rules and due process. 3-ER-404-05. Specifically, it represented that "[t]he notice program includes direct notice via first class mail to all identifiable Class Members," as well as a social media notice campaign, a settlement website, and a toll-free number. 3-ER-404-05. As with the Amplify Settlement, the motion exhaustively detailed the "direct notice effort." 3-ER-404-05; 3-ER-492-559.

In an order entered June 16, 2023, the district court granted preliminary approval of the Shipping Defendants Settlement. 3-ER-365-

73.  The terms of the order were essentially identical to those of the order granting preliminary approval of the Amplify Settlement.  It required that a request to be excluded from the class be mailed and postmarked no later than August 21, 2023, and clearly state the class member's desire to be excluded from the settlement classes, as well as the class member's name, address, and signature.  3-ER-368-69.

On September 14, 2023, the district court granted final approval of the Shipping Defendants Settlement.  2-ER-102-06.  As with the Amplify Settlement, this order incorporated the specifically defined plaintiff classes and found that the notice effectuated pursuant to the preliminary approval order constituted the best notice practicable under the circumstances, constituted due and sufficient notice to the classes of the terms of the settlement agreement and the final approval hearing, and fully complied with legal requirements.  2-ER-104-05.  The court entered judgment the same day.  1-ER-11-13.

14

**C.** **Pacific Airshow pursues its independent claims from the oil spill and seeks exclusion from the class action settlements, but ultimately is forced into them.**

**1.** **Pacific Airshow is injured by the oil spill and begins settlement talks with Amplify that are separate and apart from this class action.**

Since 2017, Pacific Airshow has been producing an annual, very well-attended three-day airshow in Huntington Beach, California. 2-ER-96; 2-ER-230. In October 2021, the city canceled the last day of the airshow because of the oil spill, and Pacific Airshow claimed substantial losses due to the cancellation. 2-ER-230-31.

Pacific Airshow promptly notified Amplify of its losses. 2-ER-97; 2-ER-34-35. During settlement negotiations, it presented Amplify with claims for damages. 2-ER-230. As part of its overall claims, Pacific Airshow demanded reimbursement for ticket sales so that it could issue refunds. As a result of these discussions, in 2022 Amplify agreed to pay Pacific Airshow interim, partial compensation in the amount of $322,104.33 for that purpose. 2-ER-230-32. The settlement expressly did not constitute a release of Pacific Airshow's other claims against Amplify, which the parties continued to negotiate. 2-ER-231.

15

> **2.** **The Settlement Administrator does not consider Pacific Airshow to be part of any class and does not send it individual notice of the Amplify Settlement by the deadline for doing so.**

"[S[hortly after the incident," Pacific Airshow directly communicated to class counsel and "made it very clear they did not want to be part of the class action, did not want their damages to be part of the class action, and was in no way involved and fully knew that whatever their damages were, were not going to be part of the class action." 2-ER-141.

The court-ordered notice plan for the Amplify Settlement included "direct notice via first class mail to all identifiable Class Members," to be completed by January 16, 2023. 4-ER-731; 4-ER-813; 4-ER-695-96. The Settlement Administrator reported that it had, with the assistance of class counsel, compiled a list of over 1,300 Waterfront Tourism Class members and sent them all individual direct mail notice on January 10, 2023. 3-ER-579-80.

The Settlement Administrator did *not* send Pacific Airshow direct notice by that deadline because Pacific Airshow "was not part of the direct class notice." 2-ER-210-12; 2-ER-62; 2-ER-123. This omission was not inadvertent; the Settlement Administrator never considered Pacific

16

Airshow to be part of the class, and class counsel's understanding was "consistent" with that decision.  2-ER-123-25.

### 3. At Amplify's later request, the Settlement Administrator allegedly sends Pacific Airshow individual notice of the court-approved class settlement—four months after the notice deadline and three months after the opt-out deadline.

Notice was allegedly sent to Pacific Airshow, at Amplify's urging, on May 18, 2023—more than four months after the notice deadline, more than three months after the opt-out deadline, and more than three weeks after the settlement was final.  2-ER-209-12; 2-ER-62; 2-ER-123; 3-ER-565-66.  Pacific Airshow never received that months-late notice.  2-ER-67; 2-ER-100-01.

On June 7, 2023, class counsel and Amplify's counsel informed Pacific Airshow that they understood it had been served with class notice on May 18, 2023.  2-ER-68.  On June 9, 2023, Pacific Airshow requested copies of the claims package and notice that had allegedly been sent to it, but it received neither.  2-ER-67-68; 2-ER-100-01.  That same day, the Settlement Administrator for the first time provided Pacific Airshow with a claimant ID and confirmed that the deadline to file a claim was midnight that day.  2-ER-82-83.

17

**D.    Out of an abundance of caution, Pacific Airshow submits an opt-out request and a claim.**

Although it had never received individual class notice and it did not believe itself to be a class member, on June 9, 2023, Pacific Airshow submitted to the Settlement Administrator an opt-out request.  2-ER-67-69; 2-ER-126.  It stated that it did not believe that it fell "within any settlement class such that a claim or opt out would be necessary" but that it submitted the claim "out of an abundance of caution" in the event it was otherwise determined.  2-ER-68, 71.  It asserted its right to opt out of the class if it indeed were ever determined to be a class member and expressly reserved all rights to opt out and pursue a separate lawsuit and other remedies for the damages it had suffered because of the oil spill.  2-ER-68, 71.  It stated that it should not be included in the class settlement and that the claim it was making would be effective only if "the Court determines [Pacific Airshow] to be bound by the class definition without the ability to opt-out."  2-ER-68, 71.

**E.    The Settlement Administrator assures Pacific Airshow that it is not a class member.**

On August 7, 2023, in a letter relating to the Amplify Settlement, the Settlement Administrator informed Pacific Airshow:  "Based on our

18

records and the information you provided, we have determined you are not a member of any of the Settlement Classes." 2-ER-73-74.

### F. Pacific Airshow does not receive individual notice of the Shipping Defendants Settlement, but still opts out of that settlement too.

Plaintiffs' notice plan for the Shipping Defendants Settlement likewise included "direct notice via first class mail to all identifiable Class Members," which the court ordered be completed by July 24, 2023. 3-ER-404-05; 3-ER-484-85; 3-ER-369. Pacific Airshow never received individual notice of the Shipping Defendants Settlement and is unaware whether the Settlement Administrator ever sent it such notice. 2-ER-97. Nevertheless, again out of an "abundance of caution," Pacific Airshow's attorneys, acting on its behalf, sent a letter to the Settlement Administrator on August 21, 2023, opting out of the Shipping Defendants Settlement—even though the class definition was the same in both settlements, and the Settlement Administrator had already informed Pacific Airshow it was not included within that definition. 2-ER-63, 86.

### G. The Settlement Administrator deems Pacific Airshow's opt-out of the Shipping Defendants Settlement invalid on technical grounds.

In a declaration filed with the court on August 28, 2023, a representative of the Settlement Administrator declared that Pacific Airshow had submitted the only invalid opt-out request for the Shipping Defendants Settlement. 2-ER-241, 244. Pacific Airshow's opt-out request was deemed invalid because:

> Inadequate Statement; No valid mailing address (attorney address provided); No valid telephone number (attorney telephone number provided); Invalid signature (attorney signed).

2-ER-241, 244.

The Settlement Administrator never informed Pacific Airshow that the opt-out request had been deemed invalid, and Pacific Airshow never had the opportunity to cure any deficiencies. 2-ER-63.

### H. Pacific Airshow attempts to reach the Settlement Administrator to rectify any technical defects in its opt-out to the Shipping Defendants Settlement, and the Settlement Administrator again informs it that it is not a member of any class.

On August 29, 2023, upon obtaining a copy of the Settlement Administrator's declaration, Pacific Airshow's attorney reached out unsuccessfully to it to resolve the matter. 2-ER-79; 2-ER-131. He tried

20

again on September 1, September 7, and September 13, 2023. 2-ER-77-78. Finally, on September 13, 2023 at 6:03 pm, the President and CEO of the Settlement Administrator emailed back: "[M]y staff has made a determination that we do not believe Pacific Airshow is a Class Member in this Action." 2-ER-77. Thus, as of September 13, 2023, the Settlement Administrator had unequivocally conveyed to Pacific Airshow that it was not a class member in either settlement.

## I.  Amplify convinces the district court to put Pacific Airshow into the Waterfront Tourism Class, which is subject to both settlements.

Amplify reacted to the Settlement Administrator's determination that Pacific Airshow was "not a member of any of the Settlement Classes" by filing a motion in which it argued that the Settlement Administrator had erred, and it asked the court to declare Pacific Airshow a member of the Waterfront Tourism Class. 2-ER-73-74; 2-ER-194. It did not mention that Pacific Airshow had not been provided individual notice or the opportunity to opt out of the settlement by the court-ordered deadline. 2-ER-194-201.

The motion was noticed to be heard on October 16, 2023. 2-ER-186-90. On the evening of September 13, 2023, the Settlement Administrator

21

again informed Pacific Airshow that it was *not* a member of the Waterfront Tourism Class or any other class. 2-ER-77. The very next day, the district court sua sponte elected to hear and decide Amplify's motion. 2-ER-127-28. At that point, Pacific Airshow's attorneys had never even appeared in the action, and had not had an opportunity to file an opposition to the motion.[5] 2-ER-109-10; 2-ER-107-08.

Though he was not on notice that the class definition issue would be decided that day, Pacific Airshow's attorney was present and was asked by the judge to join the hearing. 2-ER-112, 120, 126 ("[I]t feels like we're walking into a gun fight. [¶] We don't know the history here in terms of this class definition."). Amplify's attorney, in contrast, came prepared to make an elaborate argument in favor of its motion, complete with a slide show. 2-ER-138-39. The class counsel noted its "position has been consistent with what the administrator determined." 2-ER-120, 125.

The court referred Amplify's motion to two special masters, who conducted a hearing that day and held that Pacific Airshow fell within

---

[5] Under the Central District's local rules, papers in opposition to a motion are not due until 21 days before the hearing is scheduled to be heard. C.D. Cal. R. 7-9.

the definition of the "Waterfront Tourism Class."  2-ER-127-28, 129-61. The district court immediately adopted that holding in an order.  1-ER-8, 9.  Neither gave a reason for this holding.  1-ER-8, 9.

### J.    The district court denies Pacific Airshow's request to opt out of the settlements.

Immediately after the Settlement Administrator's decision was reversed and Pacific Airshow was put into the settlements, its counsel asked the court whether Pacific Airshow had the opportunity to opt out. 2-ER-162-63.  The court ordered the parties to submit simultaneous briefing relating to Pacific Airshow's rights or ability to opt out of the settlements.  2-ER-167.

In a minute order filed October 24, 2023, the court denied Pacific Airshow the right to opt out of either settlement.  1-ER-2-7.  It denied Pacific Airshow's opt-out from the Amplify Settlement on the grounds that publication notice of the settlement was sufficient, and that Pacific Airshow had tried to "have it both ways" by seeking to opt out and, in the alternative, submit a claim.  1-ER-5-6.  It denied Pacific Airshow's opt-out from the Shipping Defendants' Settlement on the ground that its opt-

out notice contained defects that it had not attempted to rectify.  1-ER-6-7.

### K.    Pacific Airshow appeals.

This timely appeal followed.  6-ER-1209-32.

## SUMMARY OF THE ARGUMENT

This Court should reverse for three reasons.

One, the district court erred when it declared Pacific Airshow to be a member of the Waterfront Tourism Class.  It simply does not fit the class definition established by the operative complaint and the settlement agreements, and it is unlike all the other members of the class in critical ways, including that the proposed distribution plans do not apply to its claims.    Neither Class Counsel nor the Settlement Administrator believed Pacific Airshow was a member of the class—they did not send Pacific Airshow timely notice of the class settlements and the Settlement Administrator expressly informed Pacific Airshow that it was not a class member.

Two, if this Court concludes Pacific Airshow does fit within the class definition, the district court erred in denying Pacific Airshow the right to

opt out of the Amplify Settlement. Due process, the Federal Rules of Civil Procedure, and the court's own order required that Pacific Airshow be given timely individual notice that it was considered a class member with a right to opt out, which it did not receive. It was repeatedly told it was not a class member, and so it had no duty to opt out. When the district court reversed the determination of the Settlement Administrator, it did not apply the proper criteria in deciding whether to allow a late opt-out, and instead based its decision on incorrect assumptions about the relief Pacific Airshow sought.

Three, similarly, the district court erred in denying Pacific Airshow the right to opt out of the Shipping Defendants Settlement. Pacific Airshow's submission of its opt-out request through counsel did not render it invalid, and even if it did, Pacific Airshow made a concerted, prompt, good-faith effort to correct the mistake. The district court again based its decision on incorrect assumptions about the relief Pacific Airshow sought.

Accordingly, this Court should reverse the district court's orders forcing Pacific Airshow to participate in the class action settlement.

25

## STANDARD OF REVIEW AND REVIEWABILITY

*Standards of Review.* The subject class is defined in a written settlement agreement; a district court's interpretation of a writing is reviewed de novo. *Shaw v. City of Sacramento*, 250 F.3d 1289, 1293 (9th Cir. 2001).

Whether class notice comported with due process and the Federal Rules of Civil Procedure is a legal issue that is reviewed de novo. *Silber v. Mabon*, 18 F.3d 1449, 1453 (9th Cir. 1994). If notice was proper, a district court's decision to disallow a late request to opt out of a class action settlement is reviewed for abuse of discretion. *Id.*

A district court's determination that a timely notice to opt out of a class action settlement is defective is an interpretation of a writing, which is reviewed de novo on appeal. *Shaw*, 250 F.3d at 1293. If a class opt-out request is indeed defective, a district court's decision to disallow the request is reviewed for abuse of discretion. *Silber*, 18 F.3d at 1453. A district court's finding of fact—here, that Pacific Airshow did not seek to remedy its opt-out until September 14, 2023—is reviewed for clear error. *Langer v. Kiser*, 57 F.4th 1085, 1100 (9th Cir. 2023), *cert. denied*, __ S. Ct. ___, 2024 WL 674854 (Feb. 20, 2024).

*Reviewability*. Although Pacific Airshow did not have the opportunity to file a brief in opposition to the motion to determine whether it was a member of a settlement class, and did not have advance notice of the hearing on that motion, it nevertheless raised the issue at the hearing.  2-ER-126-27, 130-33, 155.  The issue was ruled on at 1-ER-8-10.

The issue of whether the trial court should allow Pacific Airshow to opt out of the Amplify Settlement was raised, *inter alia*, at 2-ER-36-58 and 2-ER-17-26.  It was ruled on at 1-ER-2-7.

The issue of whether the trial court should allow Pacific Airshow to opt out of the Shipping Defendants Settlement was raised, *inter alia*, at 2-ER-36-58 and 2-ER-17-26.  It was ruled on at 1-ER-2-7.

## ARGUMENT

### I. The District Court Erred in Declaring Pacific Airshow to Be a Member of the Waterfront Tourism Class Because It Does Not Fit Within the Class Definition.

In a class action settlement, a district court must pay "undiluted, even heightened, attention" to the class definition to protect absentees. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

27

Yet the district court unexpectedly heard Amplify's belated motion to declare Pacific Airshow to be a member of the Waterfront Tourism Class at a hearing set to consider final approval of the Shipping Settlement and other issues, and then came to a perfunctory conclusion that Pacific Airshow was a class member, contrary to the court-adopted class definition. This holding was reversible error.

## A. The definition of the Waterfront Tourism Class does not include a business like Pacific Airshow.

The Waterfront Tourism Class definition does not describe Pacific Airshow. 5-ER-974-75. Pacific Airshow is precisely what its name implies—an *airshow*, featuring performances by military and civilian aircraft. 2-ER-96; 2-ER-230; 5-ER-964. While the operative complaint represented that "Pacific Airshow had assembled the largest line up of military and civilian performers *of any airshow in U.S. history*," 5-ER-964, nothing in the definition of the "Waterfront Tourism Class" suggests that it includes businesses that provide an annual event to be viewed by spectators, even if those spectators might also patronize businesses that do fit within the definition.

Indeed, unlike Pacific Airshow, the representative class members were local shop owners; sport fishing businesses; and a fulltime, licensed commercial boat captain: Big Fish Bait & Tackle; Banzai Surf Company, LLC; Davey's Locker Sportfishing, Inc.; East Meets West Excursions; Bongos Sportfishing LLC; and Tyler Wayman.  5-ER-905-06.  The representative class members, also unlike Pacific Airshow, operated year-round businesses; Pacific Airshow, in contrast, operated a once-a-year, three-day event shut down for a single day.  2-ER-230; 5-ER-905-06, 964-66.  The oil spill impacted one-third of Pacific Airshow's annual business operations.  5-ER-964.

The conclusion that Pacific Airshow was not part of the class is also reinforced by representations class counsel made to the district court. 2-ER-124-25.

The notice plans for both settlements represented that individual direct notice would be sent to all known class members by U.S. mail and by email for those for whom email addresses were available.  4-ER-813; 3-ER-484-85.  The Amplify Settlement notice plan reported that the Settlement Administrator "is assisting Class Counsel in compiling the . . . Waterfront Tourism Class names, mailing addresses, and email

29

addresses (if available)." 4-ER-813. However, according to the Settlement Administrator, Pacific Airshow "was not part of the direct class notice," and it also did not receive notice of the Shipping Defendants Settlement, 2-ER-210; 2-ER-97—a clear indication that neither the parties nor the Settlement Administrator interpreted the settlement agreements to include Pacific Airshow within any defined class.

Additionally, in proposing distribution plans for the settlements, class counsel told the court that there were "ten categories of businesses in the Waterfront Tourism Class," including bait and tackle shops, fishing charters and other sightseeing vessels, surf schools, hotels, food and beverage establishments, and other retail establishments. 4-ER-680; 3-ER-360. None of these categories remotely describes Pacific Airshow.

### B. Amplify's arguments for putting Pacific Airshow into the Waterfront Tourism Class lack merit.

Neither the special masters nor the district court provided any clues as to why they belatedly deemed Pacific Airshow to be a member of the class. They simply "[found] that the Pacific Airshow falls within the definition of 'Waterfront Tourism Class' as described in the Class Action Settlement," without explanation. 1-ER-8, 9.

30

In support of its motion to have Pacific Airshow belatedly put into the Waterfront Tourism Class, Amplify made several arguments. None survives scrutiny.

First, Amplify argued that the complaint shows that "Class Plaintiffs and their Counsel considered the Airshow a Waterfront Tourism Class Member." 2-ER-195-97, 201. It does not. While the operative complaint explains in detail how the cancellation of the airshow caused by the oil spill injured multiple businesses within the Waterfront Tourism Class, it nowhere represents that Pacific Airshow was a member of the class. *See, e.g.*, 5-ER-901, 964.

The operative complaint, like the settlements themselves, limited the classes to just some, not all, of the injured individuals and businesses—those that fit within the specific class definitions. 5-ER-973-75. The fact that the operative complaint mentioned Pacific Airshow does not mean that it was a member of any class, unless it fit within one of the class definitions.

The Settlement Administrator, who was tasked with determining eligibility for a settlement payment, determined Pacific Airshow was not

31

a member of any of the settlement classes.  2-ER-66, 73-74.  Class counsel

ultimately agreed with that decision.  2-ER-124-25.

Principally, though, Amplify argued that Pacific Airshow is a

member of the Waterfront Tourism Class by relying on a couple of words

excerpted from a narrow segment of the class definition.  Specifically, it

focused on the part of the definition identifying persons or entities who

"owned businesses that offered surfing, paddle boarding, recreational

fishing, and/or other beach or ocean equipment rentals and/or lessons or

activities."  In arguing its motion, Amplify stripped this passage down to

just the concluding term in this long list, *i.e.*, "beach . . . activities."  At

the hearing before the special masters, Amplify's attorney also zeroed in

on "beach activities."  2-ER-142, 145-47.

However, a writing cannot be interpreted by stripping a long list of

specific items down to a single general item contained within the list.

Rather, "[u]nder the rule of *ejusdem generis*, where general words follow

an enumeration of specific items, the general words are read as applying

only to other items akin to those specifically enumerated."  *Harrison v.

PPG Indus., Inc.*, 446 U.S. 578, 588 (1980); *Sacramento Reg'l Cnty.

Sanitation Dist. v. Reilly*, 905 F.2d 1262, 1269 (9th Cir. 1990) (collecting

32

authorities). *Ejusdem generis* "refers to the inference that a general term in a list should be understood as a reference to subjects akin to those with specific enumeration." *Grondal v. United States*, 21 F.4th 1140, 1165 (9th Cir. 2021) (quoting *In re Pangang Grp. Co.*, 901 F.3d 1046, 1056 (9th Cir. 2018)), *cert. denied sub nom. Mill Bay Members Ass'n v. United States*, 143 S. Ct. 108 (2022).

Here, Amplify tried to shoehorn Pacific Airshow into the class definition by plucking the general term "beach activities" out of a much longer and more specific list: "businesses that offered surfing, paddle boarding, recreational fishing, and/or other beach or ocean equipment rentals and/or lessons or activities." 5-ER-974. This list describes businesses serving persons who are actively and regularly engaging in water-related sports on or near the beach, not a business that offers a once-a-year performance that can be observed overhead by the citizens of Huntington Beach and neighboring cities, regardless of whether they are at or near the beach. 5-ER-964-65.

The principle of *ejusdem generis* precludes defendants from ignoring the words that show the limited scope of their agreement and instead focusing on general terms in an attempt to add something to the

33

agreement that simply is not there. *Sacramento Reg'l Cnty. Sanitation Dist.*, 905 F.2d at 1269-70. A comprehensive reading of the definition of the Waterfront Tourism Class confirms what the Settlement Administrator recognized all along: Plaintiffs and defendants agreed on a settlement in which Pacific Airshow is not a class member. This Court can and should reverse for this reason alone.

## II.    The District Court Erred in Determining That Pacific Airshow Received Adequate Notice and Refusing to Allow It to Opt Out of the Amplify Settlement.

 Having erroneously and belatedly declared Pacific Airshow to be a member of the Waterfront Tourism Class, the district court proceeded to commit further legal error and abuse its discretion by denying Pacific Airshow's request to opt out of the class action settlements.

Contrary to the court's holding, Pacific Airshow was not sent legally sufficient notice and was thus deprived of its right to timely opt out of the litigation. On this ground alone, reversal is warranted. It is also warranted because the district court abused its discretion by failing to address numerous factors relevant to Pacific Airshow's opt-out request and basing its decision on demonstrably incorrect assumptions about the

relief Pacific Airshow sought and about prejudice to Amplify if Pacific Airshow were allowed to opt out.

**A.  The class notice given to Pacific Airshow did not comport with the law, and thus Pacific Airshow was denied its right to opt out.**

The district court rejected Pacific Airshow's contention that "its due process rights were violated because it did not receive direct notice that it was a member of the class and had the right to exclude itself from the Settlements." 1-ER-5.  The court found that Pacific Airshow's contention was negated by the fact that it "does not contest that it received publication notice." 1-ER-5.  Here, however, publication notice to Pacific Airshow was legally deficient.  As a result, the court's failure to allow Pacific Airshow to opt out of the Amplify Settlement was an error of law that compels reversal.

**1.  The class notice did not comport with Rule 23.**

Publication notice of a class action can sometimes be adequate, but as a matter of law, publication notice to Pacific Airshow in this case did not meet the minimal legal standard.  The Supreme Court has cautioned that, if a potential class member is to be bound in an action for monetary damages, the forum must "provide minimal procedural due process

35

protection," including notice, and that "[t]he notice must be the best practicable." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

The Federal Rules of Civil Procedure are even more specific. "For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see* 4-ER-693-94; 3-ER-366-67 (classes in this action certified under Rule 23(b)(3)).

The Supreme Court has emphasized that this requirement means exactly what it says:

> *[I]ndividual notice* to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an *unambiguous requirement* of Rule 23. . . . Accordingly, each class member who can be identified through reasonable effort *must* be notified that he may request exclusion from the action and thereby preserve his opportunity to press his claim separately . . . .

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974) (emphasis added).

"In *Eisen*, the Court held that Rule 23(c)(2) *required individual notice* to absent class members, so that each class member could decide whether to 'opt out' of the class and thereby preserve his right to pursue

36

his own lawsuit." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 351 (1983) (emphasis added).  "*[I]ndividual notice* to class members identifiable through reasonable effort is *mandatory* in (b)(3) actions . . . ." *Amchem Prods.*, 521 U.S. at 617 (citing *Eisen*, 417 U.S. at 176) (emphasis added).

In compliance with Rule 23, the notice plan proposed for the Amplify Settlement included "direct notice via first class mail to all identifiable Class Members," and the court found that this "constitutes the best notice practicable under the circumstances of this Action."  4-ER-731; 4-ER-695; *see* 4-ER-812-15.  But this notice was not timely given to Pacific Airshow.

The court therefore erred, because Pacific Airshow was reasonably identifiable but did not receive timely individual notice of the settlement. Both of these facts are uncontested and uncontestable.

Pacific Airshow was not just reasonably identifiable as a potential claimant against Amplify, it was actually identified.  Pacific Airshow began communicating with Amplify in October 2021 about its damages from the oil spill.  2-ER-230-31.

Pacific Airshow was also well known to the plaintiffs. The effect of the oil spill on the Orange County economy because of the Pacific Airshow cancellation was a centerpiece of plaintiffs' complaints:

> Huntington Beach's public safety officials confirmed that 1.5 million people saw the [Pacific Airshow] from Huntington Beach on Saturday, October 2, 2021, alone . . . . The same number of spectators were expected Sunday—the day the event was canceled due to the spill.

6-ER-1159; 5-ER-1069; 5-ER-964. Amplify even pointed this out in seeking to establish Pacific Airshow as a class member. 2-ER-195-97, 201.

Pacific Airshow did not receive timely individual notice of the need to opt out of the Amplify Settlement. Plaintiffs' counsel represented: "[Pacific Airshow] did not initially receive notice, according to [the Settlement Administrator] applying its rules under the settlement." 2-ER-123. The court gave final approval to the Amplify Settlement in April 2023 and entered judgment on May 11, 2023. 3-ER-562-68; 1-ER-14-15. Not until May 17, 2023, after these milestones had passed, did Amplify push the Settlement Administrator to send Pacific Airshow notice. 2-ER-210-12.

38

Pacific Airshow did not actually receive the notice even then, and a copy of a notice ever sent to Pacific Airshow has never been identified. 2-ER-67. At that juncture, though, receiving the notice was a moot point—the February 14, 2023 deadline to opt out of the settlement had long passed, the court had given final approval to the settlement, and judgment had been entered. 4-ER-696. The below graphic illustrates that even the alleged May 18, 2023 notice came much too late.



The district court nevertheless held that Pacific Airshow had lost its right to opt out on the ground that "[t]he Ninth Circuit has routinely denied requests to opt out due to lack of direct notice." 1-ER-5.

This is not an accurate statement of the law.  This Court has at times upheld the denial of opt-out in the absence of direct notice, but only where direct notice was *not* the best practicable notice.

The district court relied on three decisions to support its view of the law: *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994); *In re Apple Inc. Device Performance Litigation*, 50 F.4th 769, 779 (9th Cir. 2022); and *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017). 1-ER-5.  None of these concerned a failure to give individual notice to a potential class member who could be readily identified.

*Silber* was a securities class action.  As stated in an earlier decision in the same case, notice of the settlement of the action and the right to opt out was to be mailed to all "identified class members."  *Silber v. Mabon*, 957 F.2d 697, 698-99 (9th Cir. 1992) ("*Silber I*").  However, under common industry practice, most publicly traded stock is held in the "street name" of brokerage houses for the benefit of their customers, and these beneficial owners did not appear on official corporate transfer records.  *Id.* at 699.  Consequently, the notice was sent to banks, brokerages, and other nominees, who in turn were requested to forward the name and last known address of the beneficial owners to the notice

administrator, or to request copies of the notice to forward to the beneficial owners directly. *Id.* The *Silber* appellant was a beneficial owner who did not appear on corporate transfer records and did not receive the notice in time to opt out of the settlement; the district court denied his request to opt out past the deadline. *Id.*

This Court vacated the settlement and remanded the matter to the district court because it agreed with appellant that the notice procedure was constitutionally deficient under then-existing precedent. *Silber I*, 957 F.2d at 698. Specifically, in an earlier decision in a different but similar case, this Court had required as a matter of constitutional due process that the class representative not only provide postage-paid notices to brokerage houses for forwarding the class notice to beneficial owners, but also offer to reimburse the record owners for the costs of forwarding the notice. *Id.* at 700-01 (citing *In re Victor Techs. Sec. Litig.*, 792 F.2d 862, 863 (9th Cir. 1986)). In *Silber I*, there was no showing that the class representative had made such an offer, and so this Court determined that "we must reverse and remand." *Id.* at 701. It remanded the case to give the district court the opportunity to determine whether

41

improved technology had made search costs so insignificant as to render the notice given the "best practicable." *Id.* at 701-02.[6]

The decision the district court relied on here, *Silber v. Mabon*, 18 F.3d 1449 ("*Silber II*"), arose after that remand. On remand, the district court held that appellant's brokerage had forwarded notices without having to be told that it would be reimbursed, that its forwarding costs were minimal, and that therefore the notice given to appellant was the "best practicable." *Id.* at 1451. On this second appeal, appellant did not challenge the holding that the notice given was the best practicable notice. *Id.*

Instead, appellant argued that the notice procedure was unconstitutional unless there is actual receipt of notice, regardless of whether the procedure used was the best practicable. 18 F.3d at 1453. This Court held that actual receipt of notice is not constitutionally required, so long as the best practicable notice has been given. *Id.* at 1454. But, in *Silber II*, individual notice to appellant was not the best

---

[6] The Court also remanded to give the class representative an opportunity to prove that the appellant had actually received notice within a reasonable time to meet the opt-out deadline. 957 F.2d at 702. Here, there is no allegation that Pacific Airshow actually received a timely notice.

42

practicable notice, because he was a beneficial owner and therefore his identity was not readily ascertainable. Since appellant conceded, and this Court agreed, that the "best notice practicable" had been given, appellant could not raise a constitutional objection. *Id.* at 1451, 1454.

This holding does not lend support to the district court's decision here. In the present case, no effort was made to timely give the easily identified claimant Pacific Airshow the best notice practicable, which necessarily included "individual notice to *all* members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B) (emphasis added). Instead, the district court simply held that publication notice was an acceptable substitute in the absence of individual notice to Pacific Airshow. 1-ER-5.

*Silber II* directly rejects this conclusion. "[I]t would be error to rely solely on notice by publication . . . ." 18 F.3d at 1453. "[T]he court cannot simply rely on notice by publication." *Id.* at 1455.

Equally inapposite was the next authority the district court relied on, *In re Apple Inc. Device Performance Litigation*, 50 F.4th 769. 1-ER-5. In that case, appellant asked this Court to overturn a class settlement as to all class members that were not natural persons, on the ground that

43

notice to them was inadequate. 50 F.4th at 779. Appellant "speculate[d] that Apple could have furnished corporate purchasers' contact information based on internal sales records." *Id.* However, Apple lacked that capability, and "[d]ue process does not require Apple to perform impossible feats." *Id.* Here, in contrast, giving timely individual notice to the well-known claimant Pacific Airshow was not an impossible feat, it was a simple routine task, and the failure to do so (if it had actually been a class member) was inexcusable.

Finally, the district court mentioned *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, in support of its ruling. 1-ER-5. *Briseno* merely holds that a class can be certified even where there is no administratively feasible way to identify members of the proposed classes, because Rule 23 requires only the "best notice that is *practicable under the circumstances*, including individual notice to all members who can be identified through *reasonable effort*." 844 F.3d at 1124-25, 1128-29 (quoting Fed. R. Civ. P. 23(c)(2)(B)). Here, in contrast, Pacific Airshow was identifiable as a claimant through no effort at all, and so (if it had been a class member) individual notice was absolutely required.

44

### 2. Pacific Airshow never had the legally mandated opportunity to opt out.

The absence of proper notice in this case, in contravention of due process and Rule 23, compels reversal and remand to allow Pacific Airshow to opt out of the Amplify Settlement. The district court relied primarily on *Silber II*, 18 F.3d 1449, to rule against Pacific Airshow's request to opt out of the Amplify Settlement. In fact, though, both *Silber* decisions require reversal of that holding.

Again, in *Silber I*, the question this Court addressed was: "Were [the] notice procedures enough to satisfy due process and Rule 23?" 957 F.2d at 701. It concluded that, because the record did not support the conclusion that the administrator had given appellant the best practicable notice, "we must reverse and remand." *Id.*

Here, there is no question that the administrator did not give Pacific Airshow the best practicable notice—which, per the requirements of due process and Rule 23, had to include individual notice because Pacific Airshow could be identified through reasonable effort. Reversal is therefore required here, as in *Silber I*.

The purpose of the remand in *Silber I* was to allow the district court to determine whether "[i]mproved technology [had] rendered search costs

45

so insignificant as to render the notice given the 'best practicable.' " 957 F.2d at 701-02. But this Court was quite clear that "[s]hould it be determined that the standard of *Victor Technologies*[, 792 F.2d 862,] continues to control"—*i.e.*, if the notice given was not the best practicable notice—"the trial court must then fashion a remedy." 957 F.2d at 702. Here, Pacific Airshow unquestionably did not receive the best practicable notice, and so the district court should be required to fashion a remedy.

This Court in *Silber I* did not determine what that remedy would be. It suggested that "allowing the appellant to opt out," the result Pacific Airshow sought here, would be one alternative. 957 F.2d at 702. It also suggested that a possible alternative could be "discarding the entire initial notice procedure and proceeding with a second and completely adequate notice procedure," *id.*—an alternative that would make no sense here, where it appears inadequate notice was given to only one claimant. The Court also suggested that other alternatives might exist, *id.*, but no one has suggested an alternative to allowing Pacific Airshow to opt out. The bottom line, though, is that failure to allow a putative class member who did not receive the adequate notice dictated by due process and Rule 23 to opt out is a legal error that requires a remedy.

**B.    The district court abused its discretion by not addressing or wrongly considering numerous factors relevant to allowing a delayed opt-out.**

*Silber II* shows that reversal is required here for a different reason. Following remand in *Silber I*, the district court found that the notice given appellant had conformed to *Victor Technologies* and therefore had been the best practicable notice; both the appellant and this Court agreed. *Silber II*, 18 F.3d at 1451, 1454 (notice procedure that did not give appellant direct notice was the best practicable notice in *Silber* because, unlike here, appellant's identity was not known to the parties or the class administrator). Even so, this Court did not affirm the district court's refusal to allow appellant to opt out of the class, because "we cannot conclude as a matter of law that there was no abuse of discretion." *Id.* at 1455.

### 1.    The district court ignored relevant factors.

In *Silber II*, it was error for the district court to "simply rely on notice by publication," but that is precisely what the district court did here. 18 F.3d at 1455. Likewise, in *Silber II*, it was "unclear if the district court considered whether there was 'excusable neglect' or good cause for the belated request such that [Federal Rules of Civil Procedure] 6(b)(2)

47

or 60(b)(1) are implicated." *Id.* Here, it is absolutely clear that the district court did not consider excusable neglect or good cause in its decision regarding the Amplify Settlement. 1-ER-5-6.

In *Silber II*, this Court presented a litany of factors a court might consider in deciding whether a late opt-out should be allowed, none of which the district court considered here:

- "the degree of compliance with the best practicable notice procedures;"

- "when notice was actually received and if not timely received, why not;"

- "what caused the delay, and whose responsibility was it;"

- "how quickly the belated opt out request was made once notice was received;"

- "how many class members want to opt out;" and

- "whether allowing a belated opt out would affect either the settlement or finality of the judgment."

18 F.3d at 1455.

All the questions these factors raise would be answered here in Pacific Airshow's favor:

48

- There was no compliance with the best practicable notice procedures, because timely individual notice was not sent to Pacific Airshow even though it was reasonably identifiable.

- Notice was received, if at all, months after the notice and opt-out deadlines and after the settlement was final, solely because notice was not sent before then.

- The delay was caused by the Settlement Administrator and the parties, who did not consider Pacific Airshow a class member and disregarded it for notice purposes until months after its time to opt out had passed.

- A notice was allegedly sent to Pacific Airshow on May 18, 2023, although any such notice was never received, and it requested to opt out on June 9, 2023.

- Other than Pacific Airshow, precisely three other class members, none in the Waterfront Tourism Class, requested exclusion from the Amplify Settlement. 3-ER-572-73.

- Allowing Pacific Airshow to opt out would affect neither the settlement nor finality of the judgment, because Amplify cannot withdraw from the settlement unless 10% of all class

49

members or class members who would have been allocated more than $5,000,0000 of the settlement fund opted out. 4-ER-758. Only three class members other than Pacific Airshow tried to opt out, and the Settlement Administrator estimated that Pacific Airshow would receive only $281,000 of the settlement fund. 3-ER-572-73; 2-ER-136.

Overall, this Court concluded in *Silber II* that it cannot say, "without more, that a belated opt out is never allowed so long as the notice given was the 'best practicable.'" 18 F.3d at 1455. A fortiori, it cannot be said that a belated opt-out is not allowed when the notice given was unequivocally *not* the best practicable. Consequently, *Silber II*, like *Silber I*, clearly holds that reversal and remand are required in this case.

## 2. Pacific Airshow did not seek duplicative relief.

The district court's order gave an additional reason not to allow Pacific Airshow to opt out of the settlement—that it had supposedly also submitted a claim. The court held that Pacific Airshow could not "preserve its right to opt-out while simultaneously making a claim as a member of the class," and that, "[h]aving timely submitted a claim to the

50

Settlement Administrator, . . . Airshow cannot avoid a class judgment."
1-ER-6.

Neither the district court nor Amplify stated a legal basis for this
ruling. In any event, the ruling is based on a total mischaracterization
of what Pacific Airshow submitted to the Settlement Administrator. Far
from asking to "have it both ways," Pacific Airshow asked to have it
exactly one way. It asked quite clearly to opt out: "Because the opt-out
period expired on Feb. 14, 2023, [Pacific Airshow] respectfully requests
the opportunity to opt-out, given the alleged notice date was after the opt-
out date." 2-ER-68. In the very next sentence it indicated that the claim
it was making was to be effective *only* if it was denied the opportunity to
opt out: "Reserving all rights to opt-out and to pursue a separate lawsuit
and all other remedies available, [Pacific Airshow] makes the following
claim out of an abundance of caution, *in case the Court determines
[Pacific Airshow] to be bound by the class definition without the ability to
opt-out*." 2-ER-68 (emphasis added). It reiterated this distinction in the
cover email by which it transmitted its claim form. 2-ER-185.

The Tenth Circuit examined a far more extreme example of a class
member asking for alternative relief in *In re Four Seasons Securities*

51

*Laws Litigation*, 493 F.2d 1288 (10th Cir. 1974). There, a class member submitted a purported proof of claim form that was modified to allow it to pursue a parallel claim in state court, and that also said that if the form as modified was not accepted, it would regard itself as having opted out of the class. *Id.* at 1290. The defendant argued that this was an insufficient request for exclusion, but the Tenth Circuit affirmed the district court's holding that it was sufficient:

> The trial court here ruled that the important question was whether notice was communicated. We consider this to be the correct judicial approach to the problem, since we are not construing a will, a deed or a contract. A reasonable indication of a desire to opt out ought to be sufficient.

*Id.* at 1291.

Here, Pacific Airshow gave a more than reasonable indication of its desire to opt out. It never asked to have two forms of relief, and there was never a chance it would receive two forms of relief. It asked to be allowed to opt out without having a claim paid or, if and only if opt-out was not allowed, to make a claim as part of the settlement class. The Federal Rules of Civil Procedure provide that, in a pleading, "[a] party may state as many separate claims or defenses as it has, regardless of consistency," and that "[p]leadings must be construed so as to do justice."

52

Fed. R. Civ. P. 8(d)(3), (e).  An informal class action submission surely should not be held to a more exacting standard.

### 3.   The opt-out request was not prejudicial to Amplify.

At the close of its order, the district court held that "[t]here is no reasonable dispute that the opt-out request is prejudicial to Defendants, which are entitled to rely on the finality of its settlement judgment."  1-ER-7.

However, Amplify negotiated its settlement on the assumption that numerous class members could and would opt out.  As is explained above, the settlement agreement to which Amplify bound itself allowed it to withdraw only if 10% of all class members, or class members who would have been allocated more than $5,000,0000 of the settlement fund, opted out.  4-ER-758.  Only three class members other than Pacific Airshow tried to opt out, and the Settlement Administrator estimated that Pacific Airshow would receive only $281,000 of the settlement fund.  3-ER-572-73; 2-ER-136.  The opt-out of Pacific Airshow with an "estimated amount" of recovery of $281,000 would have no impact on the "finality of the settlement judgment."

In any event, neither class counsel nor Amplify negotiated the Amplify Settlement with Pacific Airshow in mind. Amplify had been separately negotiating with Pacific Airshow since October 2021, undercutting any notion that it believed Pacific Airshow was ever reasonably intended to be part of the class action lawsuit. 2-ER-97; 2-ER-34-35. Amplify did not even ask whether Pacific Airshow had received direct notice until *after* the Amplify Settlement was final. 2-ER-209-12; 2-ER-62; 2-ER-123.

Later, Amplify attempted a plan to retroactively include Pacific Airshow into the settlement. When the Settlement Administrator determined Pacific Airshow was not a part of the class, Amplify took matters into its own hands and moved to force Pacific Airshow into the Amplify Settlement. 2-ER-191-203. This maneuver allowed Amplify to unilaterally end its settlement negotiations with Pacific Airshow and avoid the full measure of damages owed to it. The prejudice here is to Pacific Airshow, not to Amplify.

## III. The District Court Erred in Denying Pacific Airshow the Right to Opt Out of the Shipping Defendants Settlement.

The district court held that Pacific Airshow's request to opt out of the Shipping Defendants Settlement was invalid for two reasons:

- "[T]he Settlement Administrator advised the Court that it had deemed Pacific Airshow's opt-out letter an invalid request for exclusion for as it had no valid mailing address, no valid telephone number, and an invalid signature."

- "Although it was advised of these deficiencies on August 28, 2023, the Airshow did not seek to remedy its opt-out until the Court entered final judgment in the Shipping Defendants Settlement on September 14, 2023."

1-ER-6.

The court was wrong on both counts. Pacific Airshow's opt-out request was not deficient, and Pacific Airshow did take immediate action to try to correct whatever problems the Settlement Administrator had identified.

### A. Pacific Airshow's opt-out request was not deficient.

On August 7, 2023, the Settlement Administrator sent Pacific Airshow a letter informing it that it was not a member of any class in the litigation. 2-ER-61, 73-74. Unsurprisingly, then, Pacific Airshow did not

55

receive notice of the Shipping Defendants Settlement. 2-ER-97. Thus, it had no reason at all to opt out of the settlement.

However, acting out of an "abundance of caution," Pacific Airshow's attorneys, on August 21, 2023, did send a timely letter on behalf of Pacific Airshow to the Settlement Administrator, opting out of the Shipping Defendants Settlement. 2-ER-63, 86. The letter states quite clearly "we hereby opt out of the shipping defendant class action settlement." It is this letter that the district court held to be "invalid," accepting the assessment of the Settlement Administrator that Pacific Airshow's exclusion request included "no valid mailing address, no valid telephone number, and an invalid signature." 1-ER-6. This conclusion is indefensible.

Pacific Airshow's opt-out request plainly shows the mailing address, the telephone number, and the signature of its attorney, writing on its behalf. 2-ER-63, 86. The fact that the address, telephone number, and signature are of Pacific Airshow's attorney cannot in any way make the request invalid.

Pacific Airshow LLC is not a natural person; it is, as its name indicates, a limited liability company. As an "inanimate entity," a limited

56

liability company must act through its agents. *Scalia v. Emp. Sols. Staffing Grp., LLC*, 951 F.3d 1097, 1102 (9th Cir. 2020) (quoting *CFTC v. Weintraub*, 471 U.S. 343, 348 (1985)). An agent is "one who 'act[s] on the principal's behalf and subject to the principal's control.' " *Id.* (quoting Restatement (Third) of Agency § 1.01) (alteration in original).

In particular, an attorney acts as the agent of the client he or she represents. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396-97 (1993) (citing *Link v. Wabash R.R.*, 370 U.S. 626, 633-34 (1962)). "[T]he client is presumed to have voluntarily chosen the lawyer as his representative and agent . . . ." *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002).

Pacific Airshow acted the only way it could—through an agent, in this case its attorney—when it submitted its exclusion request. The fact that the agent it chose to perform the action was its attorney does not invalidate that action. The mailing address given on the notice was a valid address at which Pacific Airshow could receive mail concerning the settlement. The telephone number given on the notice was a valid telephone number at which Pacific Airshow could receive telephonic communications about the settlement. The signature presented on the

57

notice was a valid binding signature on behalf of the company, no less so than the signature of a managing employee or of any other authorized company agent.

Even if, contrary to fact, Pacific Airshow's opt-out request had technically not been compliant, any deviation was correctible and so minor that the refusal to accept it was legal error. Pacific Airshow was not sent direct notice, ever, which would have provided specific instructions on requests for exclusions, but it nevertheless quite plainly requested exclusion. 2-ER-63, 86; 3-ER-523, 541, 551.

The courts that have considered the matter have noted that the purposes of Rule 23 are best served by not imposing strict technical requirements on requests for exclusion. Again, the Tenth Circuit in *In re Four Seasons Securities Laws Litigation*, observed that "the correct judicial approach to the problem" of construing an opt-out request is that "the important question [is] whether notice was communicated." 493 F.2d at 1291. Here, notice of request to opt out was unquestionably communicated.

The district court here did not address the propriety of applying hypertechnical requirements to the evaluation of an opt-out request, but

the district courts that have done so have agreed with the Tenth Circuit that a reasonable indication of the desire to opt out is sufficient. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 37 F. Supp. 3d 1102, 1106 (N.D. Cal. 2014) (citing *In re Linerboard Antitrust Litig.*, 223 F.R.D. 357, 365 (E.D. Pa.), *amended by* 223 F.R.D. 370 (E.D. Pa. 2004)). Thus, "considerable flexibility" is exercised in evaluating an opt-out. *Id.* (quoting *Council on Soc. Work Educ., Inc. v. Tex. Instruments Inc.*, 105 F.R.D. 68, 71 (N.D. Tex. 1985)).

Pacific Airshow communicated far more than a "reasonable indication" of its desire to opt out. No one has suggested that the manner in which it made that communication compromised any interest of a party or the district court. The district court's declaration that Pacific Airshow's exclusion request was invalid was simply not supported by the law or the facts, and should be reversed.

## B.    Pacific Airshow acted promptly to address any irregularities in its opt-out request.

There was nothing deficient in Pacific Airshow's request to be excluded from the Shipping Defendants Settlement, but even if there had been, the district court's further reason for refusing to allow it to opt

out—that it "did not seek to remedy its opt-out until the Court entered final judgment in the Shipping Defendants Settlement on September 14, 2023," 1-ER-6—is clear error.

Pacific Airshow's opt-out letter concluded: "Please let us know if you have any questions or you need any additional information." 2-ER-86. Pacific Airshow never received a response. 2-ER-62. However, a week later, on August 28, 2023, the Settlement Administrator filed with the district court a declaration that listed Pacific Airshow's request as an "Invalid Exclusion[ ]." 2-ER-244. Neither this declaration nor any deficiency notice was ever provided to Pacific Airshow. 2-ER-63.

Pacific Airshow's attorney, again acting as its agent, then immediately reached out to plaintiffs' counsel, defense counsel, and the Settlement Administrator JND to resolve any issue raised by its opt-out request. 2-ER-131-32; 2-ER-62. On August 29—the day after the Settlement Administrator declared that Pacific Airshow's request was invalid—Pacific Airshow's attorney attempted without success to reach the declarant, Gretchen Eoff, the Senior Vice President of JND. 2-ER-79. When he was unable to do so, he sent an email the same day to the JND Senior Project Manager, copying multiple JND officials and asking,

"Can you please let me know when you and Ms. Eoff have availability to discuss this filing tomorrow or Thursday?" 2-ER-79-80. Ms. Eoff simply responded three days later that she was "[l]ooping-in" others, including JND's CEO and President. 2-ER-78, 77.

Still having failed to reach anyone at JND, Pacific Airshow's attorney sent another email on September 1, addressed to Ms. Eoff and copying multiple JND officials, asking, "Is there a time on Wednesday or Thursday next week that works for JND to get on a call with us . . . ?" 2-ER-78.

Refusing to give up, Pacific Airshow's attorney reached out again to Ms. Eoff on September 7, 2023, asking by email, "Can you please let us know if you can get on a call today, or early next week before the [September 14, 2023] hearing?" 2-ER-77-78. Not having heard back, he tried yet again on September 13, with an email asking, "I'm reaching out one last time before tomorrow's hearing to see if JND has any interest in getting on a call to discuss the issues in this case." 2-ER-77. At this point, JND's CEO and President put an end to the exchange by responding:

> While I would be happy to speak with you, my staff has made a determination that we do not believe Pacific Airshow is a

61

> Class Member in this Action. My team made a judgment call based on its best reading of the Settlement Agreement here; having said that, we most obviously will defer and follow direction provided by the Court.

2-ER-77.

At that point, the Settlement Administrator's determination that Pacific Airshow's opt-out request was invalid was moot—because it was not a member of any class, Pacific Airshow could not opt out of or make a claim in any settlement. But the very next day, September 14, 2023, the district court simultaneously declared Pacific Airshow to be a class member, overruling the Settlement Administrator, and entered the Shipping Defendants judgment. 1-ER-8-10; 1-ER-11-13.

Thus, the district court's summary conclusion that Pacific Airshow "did not seek to remedy its opt-out until the Court entered final judgment in the Shipping Defendants Settlement on September 14, 2023," 1-ER-6, is directly contrary to the undisputed facts. Pacific Airshow repeatedly tried to rectify any possible deficiencies by attempting to engage with the Settlement Administrator up to the day before the court entered final judgment, only to be advised that it was not a class member at all.

The fact that Pacific Airshow did not reasonably believe that it was a class member up to September 14, 2023, in and of itself, would have

62

justified any delay in submitting a valid opt-out request, if there had been such a delay. This Court has cited with approval the decision in *Mars Steel Corp. v. Continental Illinois National Bank & Trust Co. of Chicago*, 120 F.R.D. 51 (N.D. Ill. 1988), in which class members were allowed to opt out of a class belatedly because, although they were aware of the action, they did not know whether they were class members. *See Silber II*, 18 F.3d at 1455 n.4.

Even if Pacific Airshow's opt-out request actually had been somehow deficient, its good-faith efforts to correct any problems were an independent ground on which the trial court should have allowed it to opt out of the Shipping Defendants Settlement.

### C.  The opt-out request was not prejudicial to the Shipping Defendants.

As with Amplify, allowing Pacific Airshow to opt out of the settlement would not cause prejudice to the Shipping Defendants. Like Amplify, the Shipping Defendants negotiated their settlement on the assumption that numerous class members could and would opt out. The Shipping Defendants could not withdraw from the settlement they negotiated unless 8% of all class members, or class members who would

63

have been allocated more than $3,600,000 of the settlement fund, opted out. 3-ER-427. In fact, Pacific Airshow was the only potential class member that attempted to opt out. 2-ER-241. The Settlement Administrator estimated that Pacific Airshow would be allowed to claim only $280,000 of the comparable Amplify Settlement fund. 2-ER-136. Thus, the exclusion of a lone potential class member such as Pacific Airshow was very much within the Shipping Defendants' contemplation when they settled the case.

Moreover, the Shipping Defendants Settlement was not negotiated with Pacific Airshow as a part of the class. The operative complaint mentions Pacific Airshow, but only to show the airshow cancellation harmed certain class members (the coastal businesses). 5-ER-963-67. Pacific Airshow was never sent direct notice that it was a class member, and the district court did not deem Pacific Airshow to be a class member until September 14, 2023—months after the Shipping Defendants entered into the settlement and the same day the court finally approved it. 3-ER-409-77; 1-ER-8-10; 2-ER-102-06.

## CONCLUSION

Pacific Airshow was never a member of a settlement class in this litigation, as the Settlement Administrator repeatedly recognized, because it did not fit within any of the class definitions to which plaintiffs and defendants agreed. But even if it had been a class member, the district court erred in not allowing it to opt out, because it attempted to exclude itself from the Amplify Settlement class soon after it was informed for the first time that legally mandated notice should have been sent to it; because its request to opt out of the Shipping Defendants Settlement was valid and, even if it were not, Pacific Airshow acted promptly to rectify any irregularities; and because the district court abused its discretion by not considering numerous relevant factors and by basing its decision on demonstrably incorrect assumptions about the relief Pacific Airshow sought.

For all these reasons, Pacific Airshow respectfully asks this Court to reverse the district court's decisions and to remand the matter with directions to enter an order excluding Pacific Airshow from both settlements.

Respectfully Submitted,

Date:  February 23, 2024        By:  s/ *Mary-Christine Sungaila*
                                      Mary-Christine Sungaila
                                      Charles M. Kagay
                                      Jennifer Teaford
                                Complex Appellate Litigation Group LLP

                                      Daniel Robinson
                                Robinson Calcagnie, Inc.

                                      Suoo Lee
                                SL Law, PC

                                *Attorneys for Objector-Appellant*
                                *Pacific Airshow LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-3879

I am the attorney or self-represented party.

**This brief contains** | 12,480 | **words,** including | 136 | words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

( ● ) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

  [ ] it is a joint brief submitted by separately represented parties.
  [ ] a party or parties are filing a single brief in response to multiple briefs.
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated _____ .

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Mary-Christine Sungaila | **Date** | Feb. 23, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** | *Rev. 12/01/22*